UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**GREGORY LANGLEY,** *et al.*,
      **Plaintiffs,**

      v.        Case Number 2:25-cv-209
                         Judge Edmund A. Sargus, Jr.
                         Magistrate Judge Elizabeth P. Deavers

**NETJETS AVIATION, INC.,**
      **Defendant.**

## OPINION AND ORDER

This matter is before the Court on Plaintiffs' Objection to the Magistrate Judge's July 24, 2025 Order Denying Plaintiffs Leave to Amend Their Complaint (ECF No. 83) and Defendant NetJets Aviation Inc.'s Motion to Dismiss Plaintiffs' Second Amended Complaint (ECF No. 50). For the reasons stated below, the Court **OVERRULES** Plaintiffs' Objection (ECF No. 83) and **GRANTS** Defendant's Motion to Dismiss (ECF No. 50).

**FACTUAL BACKGROUND**

Plaintiffs Gregory Langley, Hiram Scott, Otto Rossner, William Belcher, Jim Mohr, Donald Ross, Joseph Akins, Roger Stout, and Gary Caswell allege that NetJets's mandatory age-70 retirement policy for pilots violates the Age Discrimination in Employment Act ("ADEA," 29 U.S.C. § 621, *et seq.*) and the collective bargaining agreement ("CBA") between Plaintiffs and NetJets. (Second Amended Complaint ("SAC"), ECF No. 49, ¶ 1.) Further, Plaintiffs claim that NetJets retaliated against one or more Plaintiffs by "excluding pilots not yet age 70 from flying NetJets' GL7500 aircraft." (*Id.* ¶¶ 18, 33.) Plaintiffs also seek declaratory relief for NetJets's alleged violations of 49 U.S.C. § 44729, which regulates age standards for pilots, the Railway Labor Act ("RLA") (45 U.S.C. § 151, *et seq.*), and the Worker Adjustment and Retraining Notification Act ("WARN") (29 U.S.C. § 2101, *et seq.*). (SAC, ¶¶ 28–29.)

Plaintiffs are nine private charter jet pilots employed by NetJets, a jet charter and aircraft

management company with its principal place of business in Columbus, Ohio. (*Id.* ¶¶ 1, 5, 7–8.) Plaintiffs have union membership with the NetJets Association of Shared Aircraft Pilots ("Union") and entered into a CBA with NetJets that was signed and ratified on December 30, 2020. (*Id.* ¶¶ 8–9.) Section 12.1 of the CBA states, "Neither [NetJets] nor the Union shall discriminate against any crewmembers covered by this Agreement on the basis of . . . age." (ECF No. 83-1, PageID 111.) Plaintiffs claim that the CBA does not contain a "mandatory age limit for its pilot members." (SAC, ¶ 14.)

In December 2022, Congress enacted 49 U.S.C. § 44729 (entitled "Age Standards for Pilots"), which allows air carriers to implement a 70-year-old age limit for their pilots in certain circumstances. 49 U.S.C. § 44729(a). It also states that amendments to a CBA to conform to the statute "shall be made by agreement of the air carrier and the designated bargaining representative of the pilots of the air carrier." *Id.* § 44729(f). Plaintiffs allege that NetJets lobbied for this legislation. (SAC, ¶ 11.)

In January 2023, NetJets adopted a policy requiring its pilots to retire by the age of 70, effective January 10, 2024. (*Id.* ¶ 15.) Plaintiffs claim that NetJets cited "safety" as a reason for adopting this new policy. (*Id.* ¶ 23.) Plaintiffs also allege that NetJets enacted this policy without meeting with and coming to an agreement with the designated bargaining representative of the pilots. (*Id.* ¶ 11.)

In February 2023, Plaintiffs' Union filed a grievance with NetJets regarding the "mandatory age 70 retirement policy," alleging that it violated the CBA. (*Id.* ¶ 16.) On December 26, 2023, the System Board of Adjustment, an arbitration panel established by the RLA to resolve labor disputes in the airline industry, denied the Union's grievance. (*Id.*) Since then, as alleged by Plaintiffs, NetJets terminated affected pilots after its policy went into effect on January 10, 2024.

2

(*Id.*)

According to Plaintiffs, all Plaintiffs are, or will be later this year, age 70, and therefore are at or above the mandatory retirement age set by NetJets. (*Id.* ¶ 17.) Plaintiffs allege that, "in anticipation of terminating over 83 affected pilots, including Plaintiffs, NetJets made bid postings for Check Airmen & Training Captains, and has hired younger replacements." (*Id.*) Additionally, Plaintiffs allege that NetJets has excluded pilots not yet age 70 from flying NetJets's GL7500 aircraft. (*Id.* ¶ 18.)

Plaintiffs allege that all Plaintiffs are currently certified as "fit to fly," per "semi-annual fitness for duty examinations." (*Id.* ¶ 12.1.) Plaintiffs further allege that 135 Jet charter operators have hired pilots over the age of 70 to fly their aircraft and that NetJets refers flights to companies that allow pilots over the age of 70 to fly aircraft. (*Id.* ¶ 13.)

**PROCEDURAL BACKGROUND**

Plaintiffs filed their original Complaint on October 18, 2023, in the U.S. District Court for the Northern District of Texas. (ECF No. 1.) NetJets moved to dismiss the original Complaint. (ECF No. 14.) Then, Plaintiffs filed a First Amended Complaint on December 19, 2023. (ECF No. 18.) NetJets moved to dismiss the First Amended Complaint. (ECF No. 29.) Plaintiffs sought leave to file a Second Amended Complaint (ECF No. 38), which was granted by the Northern District of Texas Court. (ECF No. 48.) Plaintiffs filed their Second Amended Complaint on May 3, 2024. (ECF No. 49.)

Plaintiffs' Second Amended Complaint bring claims for: (1) age discrimination in violation of the ADEA and the CBA, and (2) retaliation without reference to a statute. (*Id.* ¶¶ 20–25, 31–36.) Plaintiffs also seek declaratory relief for NetJets's alleged violations of 49 U.S.C. § 44729(f), the RLA, and the WARN Act. (SAC, ¶ 28.)

3

NetJets moved to dismiss Plaintiff's Second Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) (ECF No. 50) and filed a memorandum in support (ECF No. 51). Plaintiffs responded in opposition. (ECF No. 54.) NetJets filed a reply in support of its Motion. (ECF No. 55.)

In February 2025, the U.S. District Court of the Northern District of Texas informed that that it would transfer the case to this Court, per 28 U.S.C. § 1404, absent an objection from the parties. (ECF No. 56.) When no party objected, the case was transferred to this Court on March 5, 2025. (ECF Nos. 58, 59.)

On June 4, 2025, Plaintiffs sought leave to file a Third Amended Complaint to add the Union as a defendant and requested to conduct limited discovery. (ECF No. 80.) NetJets opposed the motion for leave on futility and prejudice grounds. (ECF No. 81.) The Magistrate Judge issued a notation order denying Plaintiffs' request "for the reasons provided in Defendant [NetJets's] Response in Opposition." (ECF No. 82.) Plaintiffs objected to the Magistrate Judge's order. (ECF No. 83.) NetJets responded (ECF No. 84) and Plaintiffs filed a reply (ECF No. 85).

**ANALYSIS**

The Court first addresses Plaintiffs' Objection to the Magistrate Judge's decision denying their Motion for Leave to File a Third Amended Complaint. After agreeing with the Magistrate Judge that amending the complaint for the third time would be futile, the Court turns to NetJets's Motion to Dismiss.

I. **Plaintiffs' Objection to Magistrate Judge's Order**

Plaintiffs sought leave to amend their complaint for the third time, almost two years after they initiated this lawsuit. (ECF No. 80.) They sought to add the Union as a defendant and bring an unfair labor practices claim against it for allegedly colluding with NetJets to enact 49 U.S.C.

4

§ 44729. (*Id.*) They also requested to conduct limited discovery, asserting that it was necessary to respond to NetJets' Motion to Dismiss. (*Id.*) NetJets opposed both requests. (ECF No. 81.)

NetJets contended that a Third Amended Complaint would be futile because: (1) the Union is not subject to the National Labor Relations Act ("NLRA") (29 U.S.C. § 151, *et seq.*), (2) federal courts do not have jurisdiction under Section 8 of the NLRA; and (3) Plaintiffs' claim would be time-barred. (*Id.*) NetJets also argued that a Third Amended Complaint would be prejudicial because of the additional time and resources it would incur in responding to the complaint. (*Id.*) Further, NetJets argued that discovery was not necessary to address its Motion to Dismiss because the Motion was based on purely legal arguments. (*Id.*) The Magistrate Judge issued a notation order denying Plaintiffs' motion for leave "for the reasons provided in Defendant [NetJets] Response in Opposition." (ECF No. 82.)

Plaintiffs objected to the Magistrate Judge's order. (ECF No. 83.) They assert that (1) their proposed claim against the Union is under the RLA, not the NLRA, (2) the claim is not time-barred, and (3) NetJets would not be prejudiced because Plaintiffs do not seek to change their claims against NetJets—just add a new claim against a new defendant. (*Id.*) They do not address the Magistrate Judge's denial of their request for limited discovery in their Objection. (*See id.*)

Because Plaintiffs did not object to the Magistrate Judge's dismissal of their request to conduct limited discovery, they forfeit that argument. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019) (a party forfeits arguments not raised in an objection). Thus, the Court only considers their request to amend file a Third Amended Complaint.

When considering an objection to a nondispositive matter, the district court must set aside an order that is clearly erroneous or contrary to law. Fed. R. Civ. P. 72(a). The "clearly erroneous" standard applies to factual findings made by the Magistrate Judge, while legal conclusions are

5

reviewed "under the more lenient 'contrary to law' standard." *Gandee v. Glaser*, 785 F. Supp. 684, 686 (S.D. Ohio 1992) (Kinneary, J.). Applying this standard, the Court agrees with the Magistrate Judge that amending the complaint a third time would be futile and overrules Plaintiffs' Objection.

Congress established the RLA to prevent interruptions to interstate commerce by establishing a framework to resolve labor disputes in the railway and airline industries. 45 U.S.C. § 151a. The RLA governs the relationships among NetJets, the Union, and Plaintiffs. The NLRA, on the other hand, provides labor protections to employees, but specifically excludes the railway and airline industries. 29 U.S.C. §§ 151, 152(3) ("The term 'employee' . . . shall not include any individual employed by an employer subject to the Railway Labor Act."); *Air Line Pilots Ass'n v. Nat'l Lab. Rels. Bd.*, 525 F.3d 862, 870 (9th Cir. 2008); *N. Mem'l Health Care v. Nat'l Mediation Bd.*, No. 23-194 (DSD/DTS), 2024 WL 3959254, at *4 (D. Minn. July 29, 2024). Accordingly, Plaintiffs cannot bring a claim against the Union under the NLRA.

In their Objection, Plaintiffs assert that they seek to add new claim against the Union under the RLA, not the NLRA. (ECF No. 83, PageID 102.) While Plaintiffs' motion for leave is unclear about which statute they intend to bring the new claim under, their proposed Third Amended Complaint is clear. It states, "Plaintiffs bring their complaint against the Union based on unfair labor practices under section 8 of the National Labor Relations Act." (ECF No. 80-1, ¶ 1.)

Plaintiffs point to two places in the proposed Third Amended Complaint where they reference the RLA as support that they intend to sue the Union under the RLA. (ECF No. 85, PageID 168.) But upon review, these references are unrelated to the new claim. Notably, the section titled "Claim against the Union" does not mention either RLA or the NLRA. (ECF No. 80-1, ¶¶ 26–30.) Plaintiffs attempt to use this ambiguity to show they always intended to sue under the RLA. But the only instance where Plaintiffs are clear about their proposed claim against the

6

Union, they state that the claim stems from the NLRA. (ECF No. 80-1, ¶ 1.) Based on their own unambiguous statement in the proposed Third Amended Complaint, the Court concludes that Plaintiffs seek to file a claim under the NLRA. They cannot do so because the NLRA expressly excludes airline-industry labor issues from its purview. The Magistrate Judge's conclusion was therefore not contrary to law, but in accord with it.

Accordingly, the Court concludes that it would be futile to add the Union as a defendant and bring a claim against it under the NLRA two years after Plaintiffs initiated this lawsuit. Because the Court agrees with the Magistrate Judge's Order, Plaintiffs' Objection (ECF No. 83.) is **OVERRULED**.

## II. NetJets's Motion to Dismiss

To state a claim upon which relief may be granted, Plaintiffs must satisfy the pleading requirements set forth in Federal Rule of Civil Procedure 8(a), which requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Accordingly, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (clarifying the plausibility standard from *Twombly*, 550 U.S. at 556). Furthermore, "[a]lthough for the purposes of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true, '[the court is] not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555) (internal quotations omitted).

A.     **Retaliation Claim & Declaratory Relief**

Plaintiffs' Response fails to address NetJets's Motion to Dismiss regarding their retaliation claim and request for declaratory relief. (*See* ECF No. 54.) Thus, Plaintiffs have abandoned the claim and requested relief. *See Humphrey v. U.S. Att'y Gen.'s Off.*, 279 Fed. App'x 328, 331 (6th Cir. 2008) (citing *Resnick v. Patton*, 258 Fed. App'x 789, 793, n.1 (6th Cir. 2007) (finding that a party waives arguments by not addressing them in opposition to a motion to dismiss in the district court)); *Thornton v. City of Columbus*, 171 F. Supp. 3d 702, 705 (S.D. Ohio 2016) (Marbley, J.). Accordingly, NetJets's Motion to Dismiss as to Plaintiffs' retaliation claim and request for declaratory relief is **GRANTED**.

B.     **ADEA Violation**

The ADEA prohibits discrimination "against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

NetJets argues that Plaintiffs' ADEA claim fails because it is barred by what NetJets calls the "savings clause" in 49 U.S.C. § 44729(e)(2). (ECF No. 51, PageID 462.) The statute states that "[a]n action taken in conformance with this section . . . may not serve as the basis for liability . . . brought under any employment law." 49 U.S.C. § 44729(e)(2). NetJets claims that the ADEA is an "employment law" within the purposes of this subsection. (ECF No. 51, PageID 470.) Thus, NetJets argues, its mandatory age-70 retirement policy cannot be challenged under the ADEA. (*Id.*)

Plaintiffs do not respond to NetJets's "savings clause" argument. (*See* ECF No. 54.) Instead, Plaintiffs argue they have stated a claim under the requirements of the ADEA—that age qualifications must be "reasonably necessary to the particular business," which is "only so when

8

the employer . . . [relies] on age as a proxy for the safety-related job qualifications." (*Id.* PageID 492.) Plaintiffs also argue that NetJets's mandatory age-70 retirement policy is not exempted under the bona fide occupational qualification ("BFOQ") exception to the ADEA. (*Id.*) The BFOQ exception permits actions otherwise prohibited by the ADEA where "age is a bona fide occupational qualification reasonably necessary to the normal occupation of the particular business." 29 U.S.C. § 623(f)(1). The BFOQ exception is the defendant's burden to raise and prove. *Meacham v. Knolls Atomic Power Lab'y*, 554 U.S. 84, 91–92 (2008).

In reply, NetJets argues that the savings clause of 49 U.S.C. § 44729(e)(2) precludes a lawsuit under the ADEA, notwithstanding Plaintiffs' arguments. (ECF No. 55, PageID 502.) NetJets argues that it need not assert a BFOQ defense in light of the savings clause and because it is an affirmative defense, BFOQ would not be raised at the motion to dismiss stage. (*Id.*)

The plain text of 49 U.S.C. § 44729(e)(2) precludes Plaintiffs' ADEA claim. It provides: "An action taken in conformance with this section . . . may not serve as the basis for liability or relief in a proceeding, brought under any *employment law* or regulation, before any court or agency of the United States or of any State or locality." 49 U.S.C. § 44729(e)(2) (emphasis added). The ADEA is an employment law. Congress enacted the ADEA to "promote employment of older persons," "prohibit arbitrary age discrimination in employment," and to help resolve "problems arising from the impact of age on employment." 29 U.S.C. § 621(b).

An Eleventh Circuit Court of Appeals case, *Avera v. Airline Pilots Association Int'l*, is instructive. 436 F. App'x 969 (11th Cir. 2011). In *Avera*, the pilot plaintiff sued his union, for alleged violations of the ADEA. *Id.* at 972. The pilot argued that his union violated the ADEA by implementing an "age 60 rule." *Id.* On appeal, the Eleventh Circuit held that 49 U.S.C. § 44729(e)(2) barred the plaintiff's ADEA claim against his union, as the union's acts were taken

9

pursuant to an act protected by the subsection. *Id.* at 978. Although the Eleventh Circuit relied on an older version of 49 U.S.C. § 44729(e)(2), the same holding applies here. NetJets's choice to adopt a mandatory age-70 retirement policy is undoubtedly an action taken in conformance with 49 U.S.C. § 44729(e)(2). And because Plaintiffs' ADEA claim is an employment law claim, it is barred by 49 U.S.C. § 44729(e)(2). Thus, Plaintiffs cannot successfully plead that adoption of a mandatory age-70 retirement policy violates the ADEA.

Plaintiffs rely on *Western Airlines, Inc. v. Criswell* to support their ADEA claim, alleging that the facts of that case are similar to this case. 472 U.S. 400, 423 (1985) (holding that the defendant airline failed to prove that its mandatory age-60 retirement policy for flight engineers fell within the BFOQ exception). Certainly, factual similarities exist between these two cases. In fact, Western Airlines, like NetJets (according to Plaintiffs), cites "safety" as the reason behind its mandatory age-60 retirement policy. *Id.* at 408. However, 49 U.S.C. § 44729(e)(2), which was enacted after *Western Airlines, Inc. v. Criswell*, precludes Plaintiffs' ADEA claim. Thus, the Court need not proceed with a BFOQ analysis.

Accordingly, the Court **GRANTS** NetJets's Motion to Dismiss Plaintiffs' ADEA claim.

C.     **Breach of the CBA**

Plaintiffs allege that NetJets breached Section 12.1 of the CBA, which states that "[n]either [NetJets] nor the Union shall discriminate against any crewmembers covered by this Agreement on the basis of . . . age." (ECF No. 83-1, PageID 111.) NetJets argues that Plaintiffs cannot bring their CBA claim before this Court because it has already been decided by mandatory binding arbitration, as required by the RLA. (ECF No. 51, PageID 472.)

The RLA sets forth mandatory arbitration for two "classes" of disputes: minor disputes and major disputes. *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252 (1994) (citing 45 U.S.C.

10

§ 151a). Major disputes "seek to create contractual rights" and minor disputes "enforce them." *Id.* at 253 (quoting *Consol. Rail Corp. v. Railway Lab. Execs.' Ass'n*, 491 U.S. 299, 302 (1989) ("*Conrail*")). A major dispute is a dispute that arises from additions or modifications to a CBA agreement. *United Transp. Union v. Cuyahoga Valley Ry. Co.*, 979 F.2d 431, 434 (6th Cir. 1992). A minor dispute is "a grievance" that emerges from "the application or interpretation of a CBA." *Hawaiian Airlines*, 512 U.S. at 255.

A major dispute can be referred to a court created by Article III of the U.S. Constitution only after the parties to the dispute have exhausted bargaining, mediation, and arbitration procedures. *Conrail*, 491 U.S. at 302 & n.3. A minor dispute "must be resolved only through the RLA mechanisms," meaning it can never be settled in an Article III court. *Hawaiian Airlines*, 512 U.S. at 253 (citing 45 U.S.C. § 184) (quoting *Atchison, T. & S.F.R. Co. v. Buell*, 480 U.S. 557, 563 (1987)).

Plaintiffs argue that their CBA claim is a "major dispute" due to NetJets adopting a restrictive age policy prohibited by the CBA, "which itself prohibits age discrimination under the ADEA." (ECF No. 54, PageID 493.) In response, NetJets argues that a claim founded on a violation of a CBA is a "minor" rather than "major" dispute, thus this Court lacks the jurisdiction to hear "minor" disputes. (ECF No. 55, PageID 503.)

Plaintiffs' breach-of-the-CBA claim has already been decided by the System Board of Adjustment—an arbitration panel established by the RLA to resolve these types of disputes. (*See* ECF No. 83-1.) It found that 49 U.S.C. § 447929(e)(2) bars Plaintiffs from asserting a violation of the CBA. (*Id.* pageID 144.) It then interpreted the CBA to conclude that NetJets's mandatory age-70 policy was not discriminatory but rather, based on safety concerns and supported by evidence of declining cognitive function and competency in aging pilots. (*Id.* PageID 144–45.) This shows

that the term "grievance" in this context is the same as in *Hawaiian Airlines* because it involves the "application or interpretation of a CBA." 512 U.S. at 255; *see also Emswiler v. CSX Transp., Inc.*, 691 F.3d 782, 784–85 (6th Cir. 2012) (concluding that a breach-of-CBA claim is a minor dispute). Further, Plaintiffs do not directly dispute the addition to or modifications of the CBA provisions themselves, but rather they seek to enforce a certain provision (Section 12.1) of the CBA. (SAC, ¶ 9.) In fact, Plaintiffs concede that NetJets's enactment of the mandatory age-70 retirement policy for pilots was not added as an amendment to the CBA. (*Id.* ¶ 11.) Instead, Plaintiffs allege that NetJets's policy violates the CBA and that determination involves the application or interpretation of the CBA. (*Id.* ¶ 21.)

For these reasons, Court holds that Plaintiffs' CBA-violation claim is a minor dispute, and, as such, it cannot be resolved by this Court. Accordingly, the Court **GRANTS** NetJets's Motion to Dismiss Plaintiffs' breach-of-the-CBA claim.

**CONCLUSION**

For the reasons stated herein, the Court **OVERRRULES** Plaintiffs' Objection to the Magistrate's July 24, 2025 Order Denying Plaintiffs Leave to Amend Their Complaint. (ECF No. 83.) Additionally, the Court **GRANTS** Defendant's Motion to Dismiss. (ECF No. 50.) Plaintiffs' Second Amended Complaint is **DISMISSED with prejudice**.

The Clerk is **DIRECTED** to enter judgment and close this case on the Court's docket.

**IT IS SO ORDERED.**

**12/5/2025**                                             s/Edmund A. Sargus, Jr.
**DATE**                                                  EDMUND A. SARGUS, JR.
                                                                  UNITED STATES DISTRICT JUDGE